No. 23-4332

In the
**UNITED STATES COURT OF APPEALS**
for the
**NINTH CIRCUIT**

Amy Konda,

Plaintiff-Appellant,

v.

United Airlines, Inc.,

Defendant-Appellee.

From the United States District Court
for the Western District of Washington

Hon. Lauren King, Case No. 2:21-cv-01320

**DEFENDANT-APPELLEE'S ANSWERING BRIEF**

Lauren Parris Watts
lpwatts@seyfarth.com
Josh M. Goldberg
jmgoldberg@seyfarth.com
SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
Telephone: (206) 946-4910

Attorneys for Defendant-Appellee
United Airlines, Inc.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, Defendant-Appellee United Airlines, Inc. ("United") hereby states that it is a wholly-owned subsidiary of United Airlines Holdings, Inc., a publicly traded company that has no parent corporation and no publicly held corporation owns 10% or more of its stock.

DATED: November 12, 2024   Respectfully submitted,

By:____*/s/ Lauren Parris Watts*_____

Lauren Parris Watts, WSBA No. 44064
lpwatts@seyfarth.com
Josh M. Goldberg, WSBA No. 60733
jmgoldberg@seyfarth.com
SEYFARTH SHAW LLP
999 Third Ave, Suite 4700
Seattle, WA 98104-4041
Telephone

Attorneys for Defendant-Appellee
United Airlines, Inc.

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ..................................................................................1

II.  JURISDICTIONAL STATEMENT .....................................................3

III.  ISSUES PRESENTED .........................................................................3

IV.  STATEMENT OF THE CASE ............................................................4

    A.  Konda's employment. ..............................................................4

    B.  Due to safety concerns, United designates jetbridge operations as an essential function of the CSR job and provides additional training...............................................................4

    C.  Konda requests for an accommodation to be exempt from jetbridge training and operations............................................6

    E.  Konda exits the RAP process. .................................................8

    F.  Konda is offered unpaid leave as an accommodation and returns to the RAP process. .................................................9

    G.  Updated medical information from Konda's doctor placed the same restrictions on her.......................................................10

    H.  Konda's requests a "Go Bag" in the second RAP meeting. ..............10

    I.  United grants Konda the requested accommodation in third RAP meeting. .......................................................................11

V.  SUMMARY OF ARGUMENT.................................................................12

VI.  ARGUMENT...........................................................................................14

    A.  Standard of Review .................................................................14

    B.  The District Court Appropriately Granted United's Motion for Summary Judgment and Denied Konda's Motion for Summary Judgment. .......................................................................15

i

1.    The District Court Appropriately Granted United's Motion for Summary Judgment on Konda's Failure-to-Accommodate Claim. ...............................................15

    a.    Elements of a failure-to-accommodate claim.................15

    b.    Undisputed evidence shows operating jetbridges was an essential function of Konda's position. ..............18

    c.    The District Court correctly concluded United complied with its obligations to engage in the interactive process in good faith.....................................25

2.    The District Court Appropriately Granted United's Motion for Summary Judgment on Konda's Disparate Treatment Claim. ....................................................................30

    a.    Elements of a disparate treatment claim........................30

    b.    Konda did not present any direct evidence of discrimination. ...............................................................31

    c.    Undisputed evidence showed Konda was not a qualified individual.........................................................33

    d.    Konda did not raise a genuine dispute of material fact that she experienced an adverse employment action..............................................................................34

    e.    Konda presented zero evidence of pretext.....................37

C.    The District Court Appropriately Granted United's Motion for Summary Judgment on Konda's Retaliation Claim...........................38

VII.    CONCLUSION..............................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta-Huerta v. Estelle*,
 7 F.3d 139 (9th Cir. 1993) ...............................................................37

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)..........................................................................15

*Ansonia Bd. of Educ. v. Philbrook*,
 479 U.S. 60 (1986)............................................................................35

*Barnett v. U.S. Air*,
 228 F.3d 1105 (9th Cir. 2000) .........................................................16

*Barnett v. U.S. Air, Inc.*,
 228 F.3d 1105 (9th Cir. 2000) .........................................................36

*Basith v. Cook County*,
 241 F.3d 919 (7th Cir. 2001) ...........................................................22

*Bates v. UPS*,
 511 F.3d 974 (9th Cir. 2007) .....................................................19, 22

*Beck v. Univ. of Wis. Bd. Of Regents*,
 75 F.3d 1130 (7th Cir. 1996)............................................................17

*Bradley v. Harcourt, Brace & Co.*,
 104 F.3d 267 (9th Cir. 1996) ...........................................................13

*Bruce v. United States*,
 759 F.2d 755 (9th Cir. 1985) ...........................................................15

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)..........................................................................14

*City of Seattle v. Am. Healthcare Servs., Inc.*,
 13 Wn. App. 2d 838 (2020) .......................................................17, 30

*Coghlan v. Am. Seafoods Co.*,
 413 F.3d 1090 (9th Cir. 2005) .........................................................31

*Cordova v. State Farm Ins. Cos.*,
124 F.3d 1145 (9th Cir. 1997) ...........................................................31

*Curley v. City of N. Las Vegas*,
772 F.3d 629 (9th Cir. 2014) ......................................................29, 30

*Dark v. Curry County*,
451 F.3d 1078 (9th Cir. 2006) ...........................................................18

*Davis v. Microsoft Corp.*,
149 Wn.2d 521 (2003) .......................................................................18

*Davis v. Team Elec. Co.*,
520 F.3d 1080 (9th Cir. 2008) ...........................................................36

*Dep't of Fair Emp. & Hous. V. Lucent Techs., Inc.*,
642 F.3d 728 (9th Cir. 2011) .............................................................36

*EEOC v. UPS Supply Chain Solutions*,
620 F.3d 1103 (9th Cir. 2010) ...........................................................25

*Enlow v. Salem-Keizer Yellow Cab Co.*,
389 F.3d 802 (9th Cir. 2004) .............................................................31

*Fey v. State*,
174 Wn. App. 435 (2013) ............................................................*passim*

*Flaherty v. Warehousemen, Garage & Serv. Station Empls.' Local Union No. 334*,
574 F.2d 484 (9th Cir. 1978) .............................................................25

*France v. Johnson*,
795 F.3d 1170 (9th Cir. 2015) ...........................................................33

*Frisino v. Seattle Sch. Dist. No. 1*,
160 Wn. App. 765 (2011) ....................................................16, 26, 35

*Gibson v. Costco Wholesale, Inc.*,
17 Wn. App. 2d 543 (2021) ...............................................18, 34, 35

*Godwin v. Hunt Wesson, Inc.*,
150 F.3d 1217 (9th Cir. 1998) ...........................................................31

*Howard v. HMK Holdings, LLC*,
   988 F.3d 1185 (9th Cir. 2021) ............................................................24

*Indep. Towers of Wash. v. Washington*,
   350 F.3d 925 (9th Cir. 2003) ..............................................................37

*Jones v. Nationwide Life Ins. Co.*,
   696 F.3d 78 (1st Cir. 2012)..................................................................26

*Kries v. WA-SPOK Primary Care, LLC*,
   190 Wn. App. 98 (2015) ......................................................................22

*Kumar v. Gate Gourmet, Inc.*,
   180 Wn.2d 481 (2014) ...................................................................15, 28

*Kuyper v. State*,
   79 Wn. App. 732 (1995) ......................................................................30

*MacSuga v. Spokane County*,
   97 Wn. App. 435 (1999) ......................................................................21

*Mayes v. WinCo Holdings, Inc.*,
   846 F.3d 1274 (9th Cir. 2017) ............................................................31

*Mayo v. PCC Structurals, Inc.*,
   795 F.3d 941 (9th Cir. 2015) ..............................................................33

*McBride v. BIC Consumer Prods. Mfg. Co.*,
   583 F.3d 92 (2nd Cir. 2009) ...............................................................24

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ...............29, 33

*Meyer Kama v. Mayorkas*,
   107 F.4th 1054 (9th Cir. 2024) ...........................................................36

*Olivier v. Baca*,
   913 F.3d 852 (9th Cir. 2019) ..............................................................24

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ..............................................................14

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,
992 F.3d 893 (9th Cir. 2021) ................................................................14

*Peterson v. Hewlett-Packard Co.*,
358 F.3d 599 (9th Cir. 2004) ...............................................................30

*Pulcino v. Fed. Express Corp.*,
141 Wn.2d 629 (2000) .........................................................18, 21, 28

*R.W. Beck & Assocs. v. City of Sitka.*,
27 F.3d 1475 (9th Cir. 1994) ...............................................................14

*Rodriguez v. ConAgra Grocery Prods. Co.*,
436 F.3d 468 (5th Cir. 2006) ...............................................................27

*Sanders v. Arneson Prods.*,
91 F.3d 1351 (9th Cir. 1996) ...............................................................33

*Sharpe v. Amerian Tel. & Tel. Co.*,
66 F.3d 1045 (9th Cir. 1995) .........................................................16, 17

*Snapp v. United Transp. Union*,
889 F.3d 1088 (9th Cir. 2012) ....................................................15, 16, 24

*Stephens v. Union Pac. R.R. Co.*,
935 F.3d 852 (9th Cir. 2019) ...............................................................23

*Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) .............................................................36

*Willis v. Pac. Mar. Ass'n*,
244 F.3d 675 (9th Cir. 2001) ...............................................................20

**Statutes**

42 U.S.C. § 12111(8) .............................................................................18

Americans with Disabilities Act, 42 U.S.C. § 12111 ......................*passim*

RCW 49.60.180(3) .................................................................................15

**Other Authorities**

29 C.F.R. § 1630.2 .................................................................................20

29 C.F.R. § 1630.2(n)(1).............................................................................22

29 C.F.R. § 1630.2(n)(2).....................................................................19, 22

Fed. R. Civ. P. 56(a).............................................................................13

Fed. R. Civ. P. 56(c).............................................................................20

Fed. R. Civ. P. 56(c)(3).........................................................................14

Fed. R. Civ. P. 56(e)(2).........................................................................20

# I.    INTRODUCTION

This instant litigation centers on Plaintiff-Appellant Amy Konda's ("Konda") request for an exemption from an essential job duty of her Station Operations Representative position to operate jetbridges.

Following a safety incident in 2017, wherein a maintenance worker incorrectly connected the jetbridge to the plane, United reviewed its jetbridge operation procedures. In that process, it uncovered that maintenance workers' labor contracts did not permit them to operate jetbridges. Due to their proximity to the jetbridge and the fact their collective bargaining agreement tasked them with jetbridge operations as a "core responsibility" that would not be outsourced to vendors, Konda and other Customer Service Representatives were designated as the sole employees responsible for operating United's jetbridges. When it rolled out its new policy, United required customer service representatives to complete jetbridge training no later than March 31, 2018.

In response to United's reminders for Konda to complete jetbridge operation training, Konda informed United that her doctor placed her under restrictions from operating hazardous equipment and machinery without exception. United, previously unaware of these restrictions, invited Konda to participate in an interactive process in order to obtain substantiating medical documentation and to assess what, if any, accommodations could be provided. Konda provided medical

documentation to support these restrictions. Before each meeting, Konda provided notes from her doctor affirming these restrictions and Konda acknowledged and affirmed these restrictions in writing every time.

In total, Konda had three interactive process meetings with United. During the first meeting, United explained that jetbridge operations were an essential feature of Konda's position that United could not eliminate. United offered to accommodate Konda by transferring her to a similar vacant position that did not require her to operate the jetbridge. Konda rejected United's offer, did not propose alternatives and left mid-meeting. United encouraged her to continue with the interactive process and confirmed three times that Konda did not want to participate in the process before she finally withdrew.

Since Konda turned down United's accommodation and would not engage further, United had no choice but to offer her unpaid leave as an accommodation until a long-term solution could be found due to her doctor's restrictions. United gave her three options: (1) remain on leave until the interactive process can identify a reasonable accommodation, (2) remain on leave until a vacant position opens up that Konda could fill, and (3) remain on leave until Konda could operate jetbridges and be returned to her position. United expressly permitted her to use paid sick leave concurrently. Konda elected to accept the first option.

When Konda ultimately decided to re-engage, United invited Konda's input and suggested alternative accommodations in their second interactive process meeting. There, Konda proposed that United permit her to operate jetbridges if she carried a "Go Bag" on her at all times that contained the tools needed to monitor and respond to emergent and unpredictable complications due to her diabetes.

Because Konda's requested accommodation would have conflicted with her doctor's restrictions, United asked Konda to confirm with her doctor that her proposed accommodation would be effective. Once United received Konda's paperwork that showed her requested accommodation would suffice, it granted Konda her preferred accommodation in their third interactive process meeting, and Konda returned to work without incident on the timeline she chose for herself.

## II.  JURISDICTIONAL STATEMENT

United agrees with Konda jurisdictional statement.

## III.  ISSUES PRESENTED

1. Did the District Court appropriately grant United's motion for summary judgment and deny Konda's for her claim of failure-to-accommodate a disability under the Washington Law Against Discrimination ("WLAD")?

2. Did the District Court appropriately grant United's motion for summary judgment and deny Konda's for her claim of disparate treatment under the WLAD?

## IV.   STATEMENT OF THE CASE

### A.   Konda's employment.

In April 1988, United hired Konda as a Reservation Sales Representative based in Los Angeles ("LAX"). 3-ER-456-57. In 1991, Konda transferred to a Ticket Sales Representation position. *Id*. In late 2002, Konda was then transferred to a part-time Station Operations Representative ("SOR") position at the Seattle-Tacoma International Airport ("SeaTac"). 3-ER-458-59. The SOR position is governed by a collective bargaining agreement that designates this SOR position as a specialty position within the Customer Service Representative ("CSR") classification. 3-ER-454-55; 5-ER-724-33. Under the terms of this agreement, United may assign covered employees to perform job duties in other classifications, regardless of the position they hold. 5-ER-724.

### B.   Due to safety concerns, United designates jetbridge operations as an essential function of the CSR job and provides additional training.

Prompted by a safety incident in late 2017, where a maintenance employee improperly placed the jetbridge on the aircraft, United reviewed its procedures for operating jetbridges. 3-ER-541-43; 4-ER-716-17; 5-ER-867-58. Management was concerned employees did not have the proper training. 3-ERF-549-550; 5-ER-855-58. During their review, United uncovered that jetbridge operations fell outside employees' obligations under their maintenance labor contract. 3-ER-541-43, 550; 4-ER-565, 716.

4

SeaTac leadership implemented new jetbridge operation procedures and required CSRs to be the sole operators of jetbridges, as a way of alleviating maintenance workers of the responsibility and ensuring the jetbridges were safely and properly positioned. 3-ER-543-44, 550-51; 4-ER-565. As CSRs were regularly in close proximity to the jetbridges and were more accessible to support daily operation, CSRs were a natural fit to exclusively operate jetbridges. 3-ER-540, 546, 557-59, 475-77; 4-ER-565, 594-96, 598. CSRs' proximity to the jetbridge was a key consideration because "with the change in the amount of aircrafts that they are towing and removing, they needed people that would be able to come at a moment's notice and either remove or replace a jetbridge." 3-ER-546. These responsibilities are also already reflected in CSR's CBA. Pursuant to the CBA's section entitled "Job Security," United agreed that it "will not contract out to outside vendor(s) the 'core' work" performed by CSRs, which included the "operation of passenger loading systems/jet bridges." 5-ER-734. Konda's job description also expressly required her to "operate passenger loading bridge controls using fine motor control of buttons and joysticks to maneuver bridge to or from the aircraft." 3-ER-475-77; 4-ER-685-92.

In January 2018, United announced a new policy that only CSRs were allowed to operate jetbridges. 4-ER-565-69; 5-ER-855-65. Konda, like all others in

her position, was required to complete jetbridge training no later than March 31, 2018. 3-ER-373; 5-ER-865-67.

Konda admitted that she performed these functions. Before these responsibilities were formally transferred to CSRs, Konda was called upon at least twice to operate a jetbridge in 2018 alone. 3-ER-530-31. Because she was the only CSR onsite between 2:30 AM and 3:30 AM, it was her sole responsibility to operate jetbridges during her shift. 4-ER-638, 647-48; *see* 3-ER-375, 461-62, 517-18, 557. As a consequence, operating jetbridges was an essential job function of the position Konda held. 3-ER-560-61; *see* 5-ER-865.

### C. Konda requests for an accommodation to be exempt from jetbridge training and operations.

In March 2018, Konda informed her supervisor, Dustin Burtis, that she could not complete the required jetbridge training because of her medical restrictions. 2-ER-228; 3-ER-469, 551; 5-ER-930. As Konda explained, her doctor's restrictions prevented her from operating hazardous equipment and machinery without exception. 3-ER-552-53. On March 28, 2018, just three days before the deadline for Konda to obtain training, Konda also told the jetbridge training coordinator that she could not complete the jetbridge training. 4-ER-600-01, 674, 716; 5-ER-868-71, 940.

When United investigated Konda's claims, United discovered that it did not have any record of Konda's claimed medical restrictions. 3-ER-551-52, 556; 5-ER-

6

867, 888-89. In her deposition, Konda also confirmed that she had never requested an accommodation due to her diabetes previously. 3-ER-465-68. As a consequence, United did not and could not know of Konda's restrictions before she informed her supervisor for them in March 2018. *See* 3-ER-397; 5-ER-867.

To facilitate Konda's request for relief from the jetbridge training, on April 18, 2018, United sent Konda a letter inviting her to participate in the interactive reasonable accommodation program ("RAP") process and sent Konda a work restriction form ("WRF") as well as a copy of her job description to provide to her physician and substantiate her limitations. 4-ER-659-60.

United received a completed WRF on April 30, 2018. 5-ER-881-82. It stated that Konda should be restricted from "driving or operating equipment, climbing, and working at heights" because of Konda's "increased risk of drop in blood sugar levels" and "transient fainting." 5-ER-882. Her doctor ultimately concluded that because the "frequency of these episodes is unpredictable," Konda was to never "drive and operate equipment" or "operate hazardous equipment/machinery," no exceptions. 5-ER-884.

On May 7, 2018, the RAP administrator contacted Konda about her WRF and scheduled a time to meet on May 22, 2018, to discuss her request for a reasonable accommodation. 4-ER-662.

/ / /

7

**D.** **Konda declines accommodation offered in the first RAP meeting.**

On May 23, 2018, United met with Konda, and she signed and acknowledged in an assessment of her functional capacities that she was restricted from operating heavy machinery. 4-ER-573, 665. After Konda acknowledged that the restrictions her doctor had placed restricted her from performing essential job functions of her position, United offered Konda a vacant lobby position, as that position would not require Konda to operate the jetbridge or participate in jetbridge training. 3-ER-493; 4-ER-574, 585, 610-11, 646, 649, 668.

Notwithstanding her doctor's opinion, Konda nonetheless insisted that she could perform all of her job functions and contested whether operating the jetbridge was an essential function of her job. 3-ER-492, 502, 512-13; 4-ER-582-83, 610-11, 667-68. In response to Konda's statements that her restrictions were inaccurate, United invited Konda to seek another assessment to update these restrictions. 4-ER-575-76. Nonetheless, following a brief break where Konda consulted with her union representative, Konda withdrew from the meeting early without offering any alternative reasonable accommodations and, shortly thereafter, Konda exited the RAP process. 4-ER-668.

**E.** **Konda exits the RAP process.**

On June 13, 2018, Konda submitted new medical documentation that affirmed she could not operate hazardous equipment or machinery. 5-ER-884.

8

United accepted Konda's medical documentation but sought clarification as to whether Konda could perform the duties of her position. 4-ER-677; 5-ER-886, 891-94. Among the question, United asked for Konda's doctor to explain why her restrictions prevent her from specifically operating jetbridges. 5-ER-891.

In response, Konda began to become disgruntled with the RAP process and provided evasive responses to United's well-intended questions to understand her functional limitations. 5-ER-886, 889, 891-94. On July 3, 2018, United responded to Konda's request to continue outside the RAP process and work directly with local leadership. 4-ER-500, 679. United explained that local leadership could not provide Konda any form of accommodation without working through the RAP process. 4-ER-677. United confirmed with Konda three times that she did not want to participate in the RAP process or be accommodated. 3-ER-497; 4-ER-616, 677.

Despite United's urgings to continue with the process and help United identify a reasonable accommodation, Konda withdrew from the RAP process. 3-ER-497, 499-504; 4-ER-679.

### F. Konda is offered unpaid leave as an accommodation and returns to the RAP process.

Once Konda exited the RAP process, United provided Konda with three options as to how to proceed: (1) Konda could remain on leave while she participated in RAP, (2) remain on leave until she could apply to another job she could perform, or (3) remain on leave until her condition improved enough that she

9

could perform the essential functions of her current job an accommodation. 4-ER-679. On July 5, 218, Konda chose to remain on leave while she participated in the RAP process. 3-ER-499, 502-05; 4-ER-618, 893-94.

**G.   Updated medical information from Konda's doctor placed the same restrictions on her.**

On July 11, 2018, Konda's doctor submitted updated medical documentation indicating that she remain under her prior work restrictions from operating hazardous machinery. 3-ER-417; 4-ER-621-22; 5-ER-896-97. In response, on July 13, 2018, United responded by providing her with an Assessment of Functional Capacities Form ("ACF") and stated that it will schedule Konda's next meeting in the RAP process once it received Konda's completed form. 4-ER-681. On July 16, 2018, Konda's AFC again affirmed that she is "restricted from climbing or working at heights and operating hazardous equipment or machinery including the jetbridge." 4-ER-683.

**H.   Konda's requests a "Go Bag" in the second RAP meeting.**

United scheduled a second RAP meeting for August 1, 2018. 4-ER-694. In that meeting, Konda acknowledged and agreed to her updated AFC that stated Konda was precluded from operating the jetbridge. 4-ER-696. In this meeting, United again offered her a vacant lobby position that would not require for her to operate jetbridges, as others were available to step in as needed. 4-ER-579, 649, 695-701. In that meeting, Konda asked if she could give alternative

recommendations, and United welcomed her thoughts and suggestions. 4-ER-697-98. Konda requested that she be exempt from jetbridge operations, an accommodation United declined. *Id.*

Konda also requested for the first time that she be permitted to operate jetbridges if she were given new tools to manage her diabetes and risk of losing consciousness. *Id.*; 4-ER-524-25, 587-90. Specifically, she requested that United allow her to bring a "Go Pack" with her supplies. *Id.* United responded positively; it informed Konda that her current medical documentation did not support her requested accommodation but assured her that if she could submit updated medical documentation describing the accommodation and concluding that it will be effective, the suggestion was well-taken. *Id.*; 4-ER-587-88, 631-32, 700-01.

## I. United grants Konda the requested accommodation in third RAP meeting.

On August 7, 2018, Konda's doctor substantiated her request for an accommodation. 5-ER-899-900. On August 17, 2018, Konda's doctor concluded Konda had access to testing supplies, snacks and other tools to manage her diabetes, Konda was not restricted from operating hazardous equipment or heavy machinery. 5-ER-902. On August 30, 2018, Konda acknowledged and agreed to her updated AFC. 4-ER-706. Under the terms of the AFC, if Konda carries her Go Pack at all times, Konda may operate jetbridges. *Id.*

11

Based on Konda's new assessment, United scheduled its third RAP meeting for September 6, 2018. 4-ER-703. At that meeting, United agreed to accommodate Konda now that her medical documentation states she is able to return to work and offered to return her to work as an SOR that day. 3-ER-522; 4-ER-705, 708.

At Konda's request, she returned on September 11 with her "Go Pack" accommodation and she completed jetbridge certification in December 2019. 3-ER-524-25; 4-ER-705-14; 5-ER-891.

## V. SUMMARY OF ARGUMENT

The order granting United's motion for summary judgment must be affirmed in its entirety.

1. Konda's failure-to-accommodate claim fails as a matter of law. In response to Konda's request to eliminate her jetbridge operations duties, United confirmed Konda's limitations and, based on her doctor's restrictions, United provided a reasonable accommodation of a reassignment to a vacant position, and Konda turned it down. Konda was not entitled to the accommodation of her choice to be exempt from jetbridge operations responsibilities since undisputed evidence in the record shows they were essential functions of her position, and she was the only person during her shift who could perform them between 2:30 AM and 3:30 AM. In the second RAP meeting, Konda proposed relying on a "Go Pack." At United's request, Konda obtained medical paperwork demonstrating the

12

accommodation would be effective, and, once United reviewed her doctor's approval, United granted Konda's request in the following RAP meeting. It is undisputed the accommodation was and remains effective.

2.     Konda's claim that United failed to engage in the interactive process in good faith fails as a matter of law because it is not a standalone claim. Additionally, United complied with its obligations to engage in the interactive process in good faith. United did not delay in scheduling Konda's first RAP meeting after she notified her supervisor that her doctor has placed her under medical restrictions preventing her operating the jetbridge. United inquired about Konda's restrictions, and she acknowledged them in her AFC multiple times. United explored options, considered Konda's request, and offered a reasonable accommodation that Konda rejected. In their second RAP meeting, Konda offered an alternative that United considered and granted once she provided sufficient medical documentation that it would be effective. Any delay in the process is a result of Konda's unilateral decision to exit the RAP process.

3.     Konda's disparate treatment claim fails as a matter of law for three reasons. First, undisputed evidence in the record demonstrate Konda could not perform essential job duties to operate jetbridges and was not a qualified to hold her SOR position. Second, Konda did not experience an adverse employment action when United extended unpaid leave as an accommodation in the interactive

13

process. Third, there is no evidence of pretext to support a finding of discriminatory intent.

## VI.    ARGUMENT

### A.    Standard of Review

The Court reviews a district court's grant of summary judgment *de novo* and affirms when there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 269 (9th Cir. 1996). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact but does not have the ultimate burden of persuasion on issues for which it will not bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.*

To survive summary judgment, the nonmovant must go beyond the pleadings and attorney argument and cite specific facts in the record showing that there is a genuine issue for trial. *Id*. at 323-24; F. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").  "The nonmovant's burden of production at this point 'is not a light

14

one'—it 'must show more than the mere existence of a scintilla of evidence' or 'some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "It must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor, assuming that all justifiable inferences are drawn in its favor." *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897-898 (9th Cir. 2021) (citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *R.W. Beck & Assocs. v. City of Sitka.*, 27 F.3d 1475, 1481, n.4 (9th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The District Court's correct legal results will be affirmed even if reached for the wrong reasons. *Bruce v. United States*, 759 F.2d 755, 758 (9th Cir. 1985).

**B.    The District Court Appropriately Granted United's Motion for Summary Judgment and Denied Konda's Motion for Summary Judgment.**

**1.    The District Court Appropriately Granted United's Motion for Summary Judgment on Konda's Failure-to-Accommodate Claim.**

**a.    Elements of a failure-to-accommodate claim.**

WLAD prohibits an employer from discriminating against any person because of "the presence of any sensory, mental, or physical disability," RCW 49.60.180(3), and is to be interpreted consistently with the Americans with Disabilities Act. *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d  481, 490 (2014). Like

the ADA, WLAD "treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2012).

An employee "notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp*, 889 F.3d at 1095. It "requires . . . [a] good-faith exploration of possible accommodations," which employers can show if they "meet with an employee, request information about the condition and her precise limitations, ask the employee what [] she specifically wants, show some sign of having considered [the] request, and offer and discuss available alternatives when the request is too burdensome." *Barnett v. U.S. Air*, 228 F.3d 1105, 1114-15 (9th Cir. 2000).

Employees are not entitled to their preferred accommodations because "[w]here multiple potential modes of accommodation exist, the employer is entitled to select the mode; the employee is not." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 779 (2011).

16

"If the attempted accommodation is not adequate, the employer may attempt another mode of accommodation or assert that the remaining available modes of accommodation constitute an undue hardship." *Id.* "The failure of an initial accommodation does not warrant liability" because the employer is not "limit[ed] … to only one attempt at accommodation, and [courts] will not impose such a requirement. An employer's previously unsuccessful attempts at accommodation do not give rise to liability if the employer ultimately provides a reasonable accommodation." *Frisino*, 160 Wn. App. at 779; *see Sharpe v. American Tel. & Tel. Co.*, 66 F.3d 1045, 1051 (9th Cir. 1995) (employer's offer of position that accommodated the plaintiff's disability, which employee rejected, was reasonable and, therefore, satisfied WLAD, regardless of whether previous transfer accommodated the employee's disability).

"Once it is determined that the employer's proposed accommodation is reasonable, "'the statutory inquiry is at an end. The employer need not … show that … the employee's alternative accommodations would result in undue hardship.'" *Sharpe*, 66 F.3d at 1050. "If, rather than defending the reasonableness of the accommodation it chose, [the employer] were required to prove that [the employee's] proposed accommodation would have imposed an undue burden, [the employee] would effectively be choosing the accommodation, not [the employer]." *Id.* ("The extent of undue hardship on the employer's business is at issue only

17

where the employer claims that it is unable to offer any reasonable accommodation without such hardship.")

At all times, "the employee also retains a duty to cooperate with the employer's efforts by explaining the disability and qualifications." *City of Seattle v. Am. Healthcare Servs., Inc.*, 13 Wn. App. 2d 838, 857 (2020). When the employee causes a breakdown in the interactive process, employers are not liable for any failure to accommodate. *Beck v. Univ. of Wis. Bd. Of Regents*, 75 F.3d 1130, 1130 (7th Cir. 1996) ("In determining who caused a breakdown in the interactive process, "courts should look for signs of failure to participate in good faith (or of) failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.").

### b. Undisputed evidence shows operating jetbridges was an essential function of Konda's position.

The District Court appropriately granted United's motion for summary judgment because Konda did not raise a genuine dispute of material fact that United failed to provide her with a reasonable accommodation. Contrary to Konda's contentions, United was not required to grant Konda's request to be exempt from her jetbridge operations duties. United retains a right to offer alternative accommodations and those duties were essential job functions. *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006) ("The ADA does not require an employer to exempt an employee from performing essential functions or to

18

reallocate essential functions to other employees.").

Nor was United required to exempt Konda from her jetbridge operations responsibilities. Eliminating an essential job function "would effectively nullify the second element of an employee's prima facie case—proof that he or she was qualified to perform the essential functions of the job." *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 534 (2003); *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 644 7 (2000) (stating that "an employer . . . is not required . . . to create a new position, to alter the fundamental nature of the job, or to eliminate or reassign essential job functions.").

"An 'essential function' is a job duty that is fundamental, basic, necessary, and indispensable to filling a particular position." *Gibson v. Costco Wholesale, Inc.*, 17 Wn. App. 2d 543, 559 (2021). "[T]he employer's identification or judgment as to the essential functions of a position is entitled to deference." *Fey v. State*, 174 Wn. App. 435, 451 (2013); 42 U.S.C. § 12111(8) (courts are obligated to give due consideration to "the employer's judgment as to what functions of a job are essential."). "The fact finder's role includes determining whether functions that the employer claims are essential are ones that the employer *in fact* treats as essential." *Fey*, 174 Wn. App. at 451; *Bates v. UPS*, 511 F.3d 974, 991-92 (9th Cir. 2007) ("The question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all

employees in the particular position to satisfy the alleged job-related requirement.").

Konda does not dispute that her collective bargaining agreement designates that "operation of passenger loading systems/jet bridges" is delineated as an essential feature of the job that "[t]he Company will not contract out to outside vendor(s)" because it represents "the 'core' work currently performed by Passenger Service employees at the following airports: …. Seattle (SEA)." 3-ER-423; 4-ER-594, 598.

Additionally, Konda does not cite any specific or substantial evidence in the record contesting the fact that she was the only SOR available from 2:30 AM to 3:30 AM who could operate jetbridges or at that her job description required her to "operate passenger loading bridge controls." 4- ER-638, 647-48, 688; *see* 3-ER-375, 461-62, 517-18, 557. Under the ADA, the "limited number of employee available" is one of the three enumerated reasons that a job function must be considered an essential job function. 29 C.F.R. 1630.2(n)(2) provides:

> A job function may be considered essential for ***any of several reasons***, including but not limited to the following 29 CFR 1630.2:
>
> (i) The function may be essential because the reason the position exists is to perform that function; [or]
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed[.]

20

(Emphasis added.). Since Konda does not raise a genuine dispute that there was no one else who could operate jetbridge between 2:30 AM and 3:30 AM, Konda could not contest operating jetbridges was an essential function of her job. *See* 4-ER-647-48; F. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may… consider the fact undisputed for purposes of the motion."). Since a duty will be classified as an essential job function for "any of" reasons listed in the ADA's regulations, this is dispositive.

While Konda speculates that maintenance workers were available, their collective bargaining agreement excluded outsourcing jetbridge operations to these maintenance workers. 3-ER-541-43, 550; 4-ER-565, 716. Pursuant to United's policies, "maintenance will no longer operate any jetways." 5-ER-866. Further, the ADA does not require for United to breach the terms of its collective bargaining and labor agreements to accommodate Konda or reassign essential job functions. *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 677 (9th Cir. 2001) ("an accommodation that is contrary to the seniority rights of other employees set forth in a CBA would be unreasonable."). Moreover, it is Konda's burden to come forward with evidence that others were available to take over these job function and to demonstrate that the accommodation at issue is available, and she has not done so. *Pulcino v. Federal Express Corp.*, 141 Wn.2d 629, 643 (2000) (to raise a prima facie case, a

plaintiff must identify "a specific reasonable accommodation was available to the employer at the time the employee's physical limitations became known and that accommodation was medically necessary."); *MacSuga v. Spokane County*, 97 Wn. App. 435, 442 (1999) ("the plaintiff employee has the burden of showing that a specific reasonable accommodation was available to the employer at the time the employee's physical limitation became known.").

Konda's argument that she performed her job for years is similarly irrelevant. United adopted new safety and security policies as a result of a safety incident in 2017 and designated CSRs to exclusively operate jetbridges in 2018 and Konda's CBA specifically authorized United. 5-ER-724 ("Employees covered by this Agreement may be assigned to perform duties across classification lines."); *see* 3-ER-540-44, 550-51, 4-ER-565, 594-96, 598, 717; 5-ER-855-65. Neither Konda nor the Court may "substitute[e] [their] own judgment for how the employer should allocate essential work among employment positions in the workplace." *Fey*, 174 Wn. App. at 451-452. As the consequence, the District Court correctly concluded that undisputed evidence in the record demonstrated Konda could not perform an essential function of her position.

On appeal, Konda contests that jetbridge operations are essential job functions by arguing they do not occupy a majority of her time at work, but her argument is inapposite. It does not call into question whether United in fact treated

her jetbridge operation duties as essential or satisfied the conditions of 29 C.F.R. 1630.2(n)(2) because there was no one else who could be reassigned Konda's jetbridge operation duties. *Fey*, 174 Wn. App. at 451. Further, courts have repeatedly rejected arguments like Konda's, as they recognize that "an essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential." *Basith v. Cook County*, 241 F.3d 919, 929 (7th Cir. 2001).

Konda attempts to sidestep the undisputed evidence in the record that her doctor stated that she cannot operate hazardous machinery and equipment and reframe the issue as Konda's failing to meet a bona fide qualification standard. She cites *Kries v. WA-SPOK Primary Care, LLC*, 190 Wn. App. 98 (2015) and *Bates v. UPS*, 511 F.3d 974 (9th Cir. 2007), in an attempt to distinguish essential job functions and bona fide safety qualifications. Her argument glosses over the regulatory language in 29 C.F.R. § 1630.2(n)(1), as it defines essential functions as "basic duties" and distinguishes qualification standards as "personal and professional attributes." Contrary to Konda's insinuations, operating jetbridges are, in fact, "basic duties" and not "personal and professional attributes.".

Konda also argues that a policy from 1990s policy prevented her from operating jetbridges, but, in her deposition, she admitted that was not in effect and never applied to her. 3-ER-468, 556; 4-ER-651-62. (On appeal, for the first time,

Konda recharacterizes this phantom policy as an occupational qualification.) Tellingly, she never identifies its terms or conditions and fails to identify the purported qualification standard at issue. In short, there is no substantial evidence in the record that United's qualification standards as opposed to Konda's ability to perform her essential job functions are at issue. In truth, her own doctors placed these restrictions on her and Konda acknowledged and agreed with them during the course of the interactive process. 4-ER-665, 677, 683, 694, 696; 5-ER-884, 886. Konda's argument is wholly premised on speculation that her doctors overlooked her limitations and the "speculation is insufficient to create a genuine issue of material fact." *Stephens v. Union Pac. R.R. Co*., 935 F.3d 852, 856 (9th Cir. 2019).

Konda's argument that she could operate jetbridges is unavailing and not supported by evidence in the record. After Konda went through a medical examination, she acknowledged and agreed with the restriction preventing her from operating jetbridges multiple times. 4-ER-665, 677, 683, 694, 696; 5-ER-884, 886. At all times, United's decision to credit her doctor's restrictions was reasonable and it, therefore, did not breach its obligation to provide a reasonable accommodation.

The Court should affirm the District Court's conclusion that undisputed evidence demonstrated Konda could not perform an essential function of her job, due to the medical restrictions Konda acknowledged in the RAP process.

24

### c. The District Court correctly concluded United complied with its obligations to engage in the interactive process in good faith.

To the extent Konda attempts to pursue a claim of liability for a claim of failure to engage in the interactive process in good faith, Konda's claim fails as a matter of law. This Court has repeatedly held that any alleged failure to engage in the interactive process is not a standalone claim. In *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1193-1194 (9th Cir. 2021), the Ninth Circuit affirmed recently:

> In *Snapp v. United Transportation Union*, 889 F.3d 1088 (9th Cir. 2018), we emphasized that liability in that situation depends on whether a reasonable accommodation was possible, not merely on the failure to engage the interactive process. *Id.* at 1095. That is, "there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Id.*

*See Fey*, 174 Wn. App. at 453 (citing *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 101 (2nd Cir. 2009), for the proposition that "there is no per se liability under the ADA if an employer fails to engage in an interactive process.").

In any case, undisputed evidence in the record showed that United complied with its obligations to interact with Konda in good faith. Konda's motion for summary judgment and response is premised on nothing but speculation and attorney argument and does not cite a scintilla of admissible evidence that raises a genuine dispute of material fact. 2-ER-121; 5-ER-924; *see Olivier v. Baca*, 913

F.3d 852, 861 (9th Cir. 2019) ("[l]egal memoranda . . . are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment.") (quoting *Flaherty v. Warehousemen, Garage & Serv. Station Empls.' Local Union No. 334*, 574 F.2d 484, 486 n.2 (9th Cir. 1978)).

Undisputed evidence in the record demonstrated that United invited Konda to participate in the RAP process shortly after Konda notified United of her workplace restrictions. 4-ER-659-60. After concluding that Konda's medical restrictions prevented her from performing an essential function of her job, United offered her a vacant and similar lobby position as an accommodation. 3-ER-493; 4-ER-574, 585, 610-11, 646, 648, 668. Konda rejected United's accommodation, left her first RAP meeting mid-way through the first meeting, and withdrew from the process. 4-ER-497, 616, 668, 677. United invited her to return to the RAP process and again offered her the reasonable accommodation of unpaid leave as they considered Konda's options and looked for other vacant positions that she may be qualified for. 4-ER-668.

While it is true that Konda eventually requested to keep a "Go Pack" on her at all times to mitigate the risk of her diabetes, United granted this accommodation request as soon as she got sign-off from her doctor. 4-ER-587, 703, 708, 712. United was not required to divine that a "Go Pack" may be effective before Konda proposed the idea. *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1112

26

(9th Cir. 2010) (explaining that the ADA does not require an employer to be "clairvoyant regarding the effectiveness of a modification."). Konda owed United a duty to engage in the interactive process in good faith and propose accommodations that are reasonable. *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012) ("It was Jones's burden to proffer accommodations that were reasonable under the circumstances.").

Even if Konda acted in good faith and offered an accommodation in this first RAP meeting (something Konda did not do), United's unsuccessful first RAP meeting could not give rise to liability because Konda voluntarily ended the meeting early and "an employer's previously unsuccessful attempts at accommodation do not give rise to liability if the employer ultimately provides a reasonable accommodation." *Frisino*, 160 Wn. App. at 779.

Konda's arguments on appeal that United "incompetently failed to obtain information from both Konda and her doctors" strains credibility. United's approach of complying with her doctor's limitations is entirely consistent with its obligations to provide reasonable accommodations to employees with disabilities based on their actual and not perceived limitations. Undisputed evidence in the record demonstrates that Konda acknowledged and agreed with her limitations, and United requested Konda to clarify her workplace restrictions whenever she challenged them and provide supporting documentation. 4-ER-875-88, 621-22,

631-32, 659-60; 5-ER-884, 891, 896-97, 902.

To the extent Konda argues her doctors did not have sufficient information about her job, her attorney's arguments contradict her testimony given in her deposition. 3-ER-483. There, she stated she explained to her doctor that United wished for her to operate a jetbridge. To the extent Konda did not provide her doctors with sufficient information about United's request, Konda has a concomitant duty to relay this information to her doctor in good faith. Any failure on Konda's part to disclose critical information to her doctor would constitute a self-inflicted injury and any breakdown would not give rise to liability.

Konda's citation to out-of-circuit authority is inapposite. In *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 484 (5th Cir. 2006), the Fifth Circuit noted an employer has an obligation "to assess the objective reasonableness of the physician's conclusions," but, here, there is no basis for United to question the restrictions was placed under, as Konda signed her AFC that acknowledged she was prohibited from operating jetbridges and agreed with them.

Finally, Konda argues that United should have considered alternatives Konda did not request. Konda argues that United should have delayed planes until another employee could operate the jetbridge or require passengers to deplane using airstairs or cargo lifts. Yet Konda provides no authority for her argument that United should be faulted for failing to consider accommodations Konda never

28

requested and cites no evidence in the record that these accommodations were available. *Pulcino*, 141 Wn.2d at 643 (to raise a prima facie case, a plaintiff must identify "a specific reasonable accommodation was available to the employer at the time the employee's physical limitations became known and that accommodation was medically necessary."). Further, Konda cites no authority for her argument that United is required to change how it operates its business to accommodate Konda or demonstrate an undue hardship when choosing between several possible accommodations. In fact, the Washington Supreme Court has expressly rejected Konda's arguments. In *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 502 (2024), the Washington Supreme Court affirmed that in response to a request for an accommodation, "the employer can defend by showing that it offered the employee a reasonable accommodation **or** that an accommodation would be an 'undue hardship' on the employer" because the employee is not entitled to the accommodation of their choice. (Emphasis added.) Since United offered reasonable accommodations, the Court does not have to reach the undue hardship question.

The Court should affirm the District Court's ruling that Konda did not raise a genuine dispute of material fact that United failed to provide her with a reasonable accommodation and, to the extent Konda pursued a standalone claim of failure to engage in the interactive process in good faith, the claim fails as a matter

29

of law and is not supported by evidence in the record.

### 2. The District Court Appropriately Granted United's Motion for Summary Judgment on Konda's Disparate Treatment Claim.

#### a. Elements of a disparate treatment claim.

The District Court did not err in concluding Konda failed to raise a genuine dispute of material fact that she was subject to unlawful disparate treatment under WLAD. Discrimination claims under the ADA and WLAD are subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). Under this framework, the plaintiff must establish a prima facie case of disparate treatment by showing that: (1) she is disabled; (2) she is qualified for the position; (3) she experienced an adverse employment action; and (4) "similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co*., 358 F.3d 599, 603 (9th Cir. 2004).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Curley*, 772 F.3d at 632.

Finally, if the defendant meets this burden, the plaintiff must show that the

defendant's alleged nondiscriminatory reason for the adverse employment action was pretextual. *Curley*, 772 F.3d at 632. "Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose." *City of Seattle v. Am. Healthcare Servs., Inc.*, 13 Wn. App. 2d 838, 856 (2020). A party "cannot create a pretext issue without some evidence that the articulated reason for the employment decision is unworthy of belief." *Kuyper v. State*, 79 Wn. App. 732, 738 (1995) ("Where, as here, the plaintiff has produced no evidence from which a reasonable jury could infer that an employer's decision was motivated by an intent to discriminate, summary judgment is entirely proper.").

> ### b. Konda did not present any direct evidence of discrimination.

Konda does not preserve any error by the District Court for failing to credit direct evidence in the record by failing to raise the issue in her opening brief.

"Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005); *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) ("'direct evidence' has been defined as 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . .'"). Direct evidence is evidence, "which, if believed, proves the fact of

31

discriminatory animus without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998); *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) ("Direct evidence of discrimination is often not easy to come by.").

Konda does not and cannot point to any comment by a decision-maker at issue that reveals animus, such as, derogatory remarks about disabilities or stereotyping that creates an obvious inference of discriminatory motive. *Cordova v. State Farm Ins. Cos*., 124 F.3d 1145, 1149 (9th Cir. 1997) (direct evidence of race discrimination where employer referred to a Mexican-American employee as a "dumb Mexican."); *Godwin*, 150 F.3d at 1221 (direct evidence found where the plaintiff's manager said they "did not want to deal with another female after having dealt with . . . Louise De PreFontaine.").

Contrary to Konda's assertion, undisputed evidence in the record demonstrates that Konda's medical documentation prevented her from performing the duties of her job. In response, United offered the accommodation of reassignment to a position that did not require for her to operate jetbridges and Konda rejected United's offer. 3-ER-493; 4-ER-574, 585, 610-11, 646, 648, 668. Thereafter, Konda exited from the RAP and would not engage further in the interactive process. 4-ER-497, 616, 677. At this point, United had no choice but to offer Konda another reasonable accommodation in the form of unpaid leave, as

32

Konda's acknowledged restrictions prevented her from performing essential functions of her position. 4-ER-679. Konda fails to offer any supporting evidence or explanation for how United's responses evidence animus as opposed to a sincere desire to accommodate Konda.

Since Konda has not proffered any admissible evidence of direct evidence of discriminatory motive, the District Court did not err in applying the *McDonnell Douglas* burden-shifting framework. *Cf. France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) ("In this case where France presented both some direct evidence and some circumstantial evidence, it is most appropriate to consider the propriety of summary judgment under the *McDonnell Douglas*.").

### c. Undisputed evidence showed Konda was not a qualified individual.

The District Court did not err in concluding that Konda failed to raise a genuine dispute of material fact of disparate treatment. WLAD only protects "qualified employees, that is, employees qualified to do the job for which they were hired." *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015); *Sanders v. Arneson Prods.*, 91 F.3d 1351, 1353 (9th 1996) ("To state a prima facie case under the ADA, a plaintiff must prove that he is a qualified individual with a disability who suffered an adverse employment action because of his disability.").

As discussed above, there is no evidence in the record that Konda was a qualified individual who could perform the duties of her position SOR position or

33

operate jetbridges at the time that United offered Konda a reasonable accommodation in the form of unpaid leave. In fact, her acknowledged workplace restrictions and other undisputed evidence in the record demonstrated she could not perform essential functions of her job. As a consequence, Konda's failure to demonstrate that she was qualified for the position meant she could not satisfy the second element of her disparate treatment claim and United is entitled to judgment as a matter of law.

### d. Konda did not raise a genuine dispute of material fact that she experienced an adverse employment action.

United did not discriminate against Konda by providing her unpaid leave as an accommodation to her workplace restrictions and permitting her to take paid sick leave concurrently. 4-ER-679. Konda was only placed on unpaid medical leave after she turned down United's offer of another vacant position, did not offer any other viable reasonable accommodation, exited the RAP process, and could not perform the duties of her position. 3-ER-493; 4-ER-574, 585, 610-11, 646, 648, 668.

This case is on all fours with *Gibson v. Costco Wholesale, Inc.*, 17 Wn. App. 2d 543 (2021). There, the plaintiff worked on the "production floor grinding eyeglass lenses into shape to fit the frame." *Id.* at 546. He requested an accommodation because he had limitations being around people and loud noises. *Id.* When the employer noticed the plaintiff taking long unscheduled breaks with

unpredictable frequency and duration, the parties agreed to accommodate these breaks. *Id.* at 550. To accommodate the plaintiff, the employer provided him with a temporary position that relived him of essential job duties and when that job was to end, the employer needed medical documentation to support his return to his regular full-time job. *Id.* While the employee obtained supporting medical documentation, the employer placed him on unpaid leave as an accommodation. *Id.* The court affirmed summary judgment for the employer, noting "Costco did not violate the WLAD by not reinstating him without medical clearance or by placing him on leave as a result." *Id.* at 558; *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70-71 (1986) (placing an employee on unpaid leave as an accommodation is not an adverse employment action; "[g]enerally speaking, '[t]he direct effect of" unpaid leave "has no direct effect upon either employment opportunities or job status.'").

Konda cites *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 778 (2011), for the proposition that United is not absolved from liability from a disparate treatment claim because it ultimately accommodated her; however, the case did not consider a disparate treatment claim. Contrary to Konda's insinuations, the *Frisino* court also held the opposite and explained that "an employer's previously unsuccessful attempts at accommodation do not give rise to liability if the employer ultimately provides a reasonable accommodation." *Id.* at

35

781. As a consequence, because Konda has not shown she was provided unpaid leave as anything other than as a reasonable accommodation due to her own doctor's restrictions, Konda's claim that she experienced an adverse employment action fails as a matter of law.

Konda also argues in passing that seeing a doctor to substantiate her limitations during the interactive process was an adverse employment action. However, Konda cites no authority for this proposition that seeing a doctor is an adverse employment action or changed the terms or conditions of her employment with United. *See Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th Cir. 2008) ("an adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment."). More fundamentally, Konda appears to attempt re-writing history. In fact, Konda voluntarily chose to go to her doctor to substantiate her request to be exempt from jetbridge training and use a "Go Pack." *Id.* at 1014 ("Granting a teacher's own request… can hardly be said to be an adverse employment action."). On this point, there is not a scintilla of evidence to support Konda's attorney argument that her medical examination changed the terms and conditions of her employment in any material way or constitute an adverse employment action because Konda did not make this argument below. As a matter of law, the District Court could not err by failing to address an argument Konda never made.

### e.     Konda presented zero evidence of pretext.

The District Court did not err in granting United's summary judgment motion because Konda failed to come forward with "specific" and "substantial" evidence of pretext. *Dep't of Fair Emp. & Hous. V. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011); *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1062 (9th Cir. 2002) ("Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial."). In truth, the record is entirely devoid of evidence of pretext.

Even if Konda contended that United "may have been mistaken as to its obligations under the ADA" and contests United's interactive process, Konda's argument would be unavailing. As this Court stated in *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000), *reserved and remanded on other grounds*, 535 U.S. 391, 406 (2002), that is not evidence of pretext. *See Meyer Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) ("When assessing the validity of an employer's stated reason for its actions, the key is not whether the reason is 'objectively false' or 'baseless' but whether the employer 'honestly believed its reasons for its actions.'") (quoting *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1062 (9th Cir. 2002)). Therefore, even if Konda challenged whether she could perform the essential job functions of her position, Konda's argument would not evidence substantial evidence in the record to support a finding of pretext.

Because Konda could not raise a genuine dispute of material fact on pretext that United acted for discriminatory reasons, the District Court appropriately concluded Konda's claim fails as a matter of law and United is entitled to judgment in its favor.

### C. The District Court Appropriately Granted United's Motion for Summary Judgment on Konda's Retaliation Claim.

Konda does not assign error with the District Court's dismissal of her retaliation claim below and, in her opening brief, she does not raise any issue for appeal. Any newfound argument Konda may wish to present for the first time in her reply brief is irrevocably waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e review only issues which are argued specifically and distinctly in a party's opening brief."); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1993) (issues not supported by argument in pro se appellant's opening brief are waived).

## VII. CONCLUSION

For all the above-mentioned reasons, the Court should affirm the District Court's judgment and conclude that Konda failed to raise a genuine dispute of material fact as to whether United failed to engage in the interactive process in good faith or engaged in disparate treatment.

38

DATED:  November 12, 2024    Respectfully submitted,

By: *s/   Lauren Parris Watts*

SEYFARTH SHAW LLP
Lauren Parris Watts, WSBA No. 44064
Josh Goldberg, WSBA No. 53549

Attorneys for Defendant-Appellee
United Airlines, Inc.

39

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 32-1**

Pursuant to Circuit Rule 32-1, Appellee hereby certifies that the text of this Answering Brief is double spaced, uses proportionately spaced typeface, and contains a total of 8,608 words, based on the word count program in Microsoft Word.

DATED: November 12th, 2024          Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Lauren Parris Watts*
　　Lauren Parris Watts
　　lpwatts@seyfarth.com
　　Josh M. Goldberg
　　jmgoldberg@seyfarth.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby declare that on this November 12th, 2024, I caused a copy of

***Appellee's Answering Brief*** to be electronically filed via the Court using the ECF

system which will send notification of such filing to the following:

John G. Barton, WSBA No. 25323
The Barton Law Firm
1567 Highlands Drive NE, Suite 110-34
Issaquah, WA 98029
Thebartonlawfirm@gmail.com

*Counsel for Plaintiff-Appellant*


DATED November 12, 2024.


*/s/ Mendy Graves*

Legal Secretary
mgraves@seyfarth.com

41